UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | |
|---|---|
| FRED NEKOUEE, individually, : | |
| : | |
| Plaintiff, : | |
| : | |
| vs. : | Case No. 2:19-cv-02695 |
| : | |
| 6300 OVERLAND HOTEL LLC, a Delaware : | |
| limited liability company, : | |
| : | |
| Defendant. : | |
| _____/: | |

## **COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other

mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues

the Defendant, 6300 OVERLAND HOTEL LLC, a Delaware limited liability company,

(sometimes referred to as "Defendant"), for declaratory and injunctive relief, and attorney's fees,

litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181

et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Tampa, Florida, in the

County of Hillsborough.

2.      Defendant 6300 OVERLAND HOTEL LLC's property, the Cloverleaf Suites

Hotel, is located at 6300 W. 100th Street, Overland Park, Kansas 66211, in Johnson County

("Cloverleaf Suites").

3.      Venue is proper in the District of Kansas, Kansas City Division because the situs

of the property lies in this judicial district.  The Defendant's property is located in and does

business within this judicial district.

4.     Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   *See also* 28 U.S.C. § 2201 and § 2202.

5.     Defendant owns, leases, leases to, or operates a place of public accommodation, the Cloverleaf Suites, as defined by the ADA, 42 U.S.C. §12181(7)(A), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

6.     Defendant is responsible for complying with the obligations of the ADA.

7.     The place of public accommodation that the Defendant 6300 OVERLAND HOTEL LLC owns, operates, leases or leases to is the Cloverleaf Suites.

8.     Cloverleaf Suites is a hotel or inn.

9.     Cloverleaf Suites is a place of lodging.

10.     Cloverleaf Suites is a place of public accommodation.

11.     Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

12.     Mr. Nekouee travels to the Kansas City area every three to six months to accompany his brother at heavy equipment auctions, or to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to visit his uncle or cousin who live in such area.

13.     Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the Cloverleaf Suites which forms the basis of this lawsuit on September 26, 2018 (check in)

and September 27, 2018 (checkout),and again on September 13, 2019 (check in) and September 14, 2019 (check out), and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to and convenient to the heavy equipment auction and dealerships, and to his uncle and cousin he visits in the Kansas City area.

14.     He also visited the Kansas City area in March 2018, and February 2019, and May 2019 and he has plans to return to the Kansas City area in in December 2019 or February 2020.

15.     The Plaintiff, Mr. Nekouee, likes to stay at moderately-priced hotels like the Cloverleaf Suites.

16.     For the reasons set forth in paragraphs 12-15 and 25 and 27, Mr. Nekouee plans to return to the Cloverleaf Suites, but he is deterred from visiting it again until the barriers to access are removed.

17.     The Plaintiff has encountered architectural barriers at the subject property.  The barriers to access that the Plaintiff encountered at the property have endangered his safety in his wheelchair, impaired his ability or those accompanying him to park a vehicle due to a lack of signage, impaired his ability to access the property due to excessively steep slopes in parking spaces for the disabled, access aisles and walking surfaces, impaired his use of rooms 414 and 513, and impaired his use of the men's restroom in the lobby restroom of Cloverleaf Suites and the restrooms in rooms 414 and 513, and have impaired his access to the goods and services at the Cloverleaf Suites.

18.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

19.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

3

20.    Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair, and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

21.    The slope of the walking surface outside of the Cloverleaf Suites and within 60 inches of its lobby entrance is steeper than 1:48 and steeper than 3.1%.

22.    On his visit to the Cloverleaf Suites, the Plaintiff encountered changes in elevation, excessively steep running slopes and cross slopes in its parking lot, access aisles, ramps and walking surfaces (sidewalks).

23.    The Plaintiff encountered barriers to access in the men's restroom in the lobby and in the accessible guest restrooms 414 and 513.

24.    The Plaintiff is deterred from visiting the Cloverleaf Suites even though he enjoys its goods and services, because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

25.    The Plaintiff is deterred from visiting the places of public accommodation in the Cloverleaf Suites, even though the hotel is close to the heavy equipment auction, heavy equipment dealerships, and the home of his uncle and cousin in the Kansas City area because of the difficulties he will experience there in the parking lot, access aisles, ramps, walking surfaces (sidewalks), guestrooms, restrooms, breakfast area, pool area, and outside patio area until the property is made accessible to him in a wheelchair.

26.    Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 32 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination

in violation of the ADA by the Defendant.

27.    Fred Nekouee desires to visit the Cloverleaf Suites not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

28.    The Defendant has discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

29.    The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

30.    Preliminary inspections of the Cloverleaf Suites have shown that violations exist.

31.    Physical conditions that exist at the Cloverleaf Suites are accurately described in each romanette (i) of each lettered subparagraph in paragraph 32 of this Complaint.

32.    The violations that Fred Nekouee personally encountered or observed on his visit to the Cloverleaf Suites include, but are not limited to:

**PARKING AREA**

a. (i) In the parking lot, the parking spaces for disabled patrons shown in the photograph below do not have signage and International Symbol of Accessibility.  (ii) This lack of signage with the International Symbol of Accessibility for these parking spaces is in violation of Federal Law 2010, ADAAG §§ 502.6 and 703.7.2.1.  (iii) Due to this lack of signage, the Plaintiff had difficulty finding an accessible parking space, and this

lack of signage deters him from staying at the Cloverleaf Suites.   (iv) The action required to provide signage is easily accomplishable and able to be carried out without much difficulty or expense.



b.    (i) In the parking lot, there are no signs with the words "van accessible" on them in front of the lobby, accessible room 414 or room 513.   (ii) In the parking lot, there are no signs identifying van parking spaces with the designation "van accessible" in front of the lobby at the shortest accessible rout or at accessible room 414 or room 513, in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   (iii) The Plaintiff observed this lack of van accessible signage, and it deters him from visiting Cloverleaf Suites.   (iv) The action required to install signage with the designation "van accessible" is easily accomplishable and able to be carried out without much difficulty or expense.

c.    (i) In the parking lot, there is no marked access aisle for the parking spaces for

disabled patrons in front of the hotel lobby.  (ii) The parking spaces for disabled patrons in front of the hotel lobby does not have a marked access aisle, in violation of Federal Law 2010, ADAAG §§ 502.1 and 502.3.3.  (iii) Due to the lack of an access aisle, the Plaintiff had difficulty unloading from and loading back into his vehicle, and he had difficulty moving toward the lobby in his wheelchair.  (iv) The action required to restripe this parking area to include an access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

d.    (i) In the parking lot, the cross slope of the parking space for disabled patrons in front of the hotel lobby has a cross slope that is steeper than 1:148 and steeper than 3.1%. (ii) The cross slope of this parking space for disabled patrons is steeper than the maximum allowed slope of 1:48 and steeper than 4%, in violation of Federal Law 2010, ADAAG § 502.4.  (iii) The Plaintiff encountered this cross slope in this parking space and it made his wheelchair unstable.  (iv) The action required to reduce the cross slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

e.    (i) In the parking lot, the running slope of the parking space for disabled patrons in front of the outside of room 414 has a running slope that is steeper than 1:148 and steeper than 3.1%.  (ii) The running slope of this parking space for disabled patrons is steeper than the maximum allowed slope of 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4.  (iii) The Plaintiff encountered this running slope in this access aisle and it made his wheelchair unstable.  (iv) The action required to reduce the running slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

f.    (i) In the parking lot, the running slope of the parking space for disabled patrons in front of the outside of room 414 has a cross slope that is steeper than 1:148 and steeper than 3.1%.   (ii) The cross slope of this parking space for disabled patrons is steeper than the maximum allowed slope of 1:48 and steeper than 4%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered this cross slope in this parking space and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

g.    (i) In the parking lot, the running slope of the parking space for disabled patrons in front of the outside of room 513 has a cross slope that is steeper than 1:148 and steeper than 3.1%.   (ii) The cross slope of this parking space for disabled patrons is steeper than the maximum allowed slope of 1:48 and steeper than 4%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered this cross slope in this parking space and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

h.    (i) In the parking lot, the running slope of the access aisle outside of room 513 has a cross slope that is steeper than 1:48 and stepper than 3.1%.   (ii) The cross slope of this access aisle is steeper than the maximum allowed slope of 1:48 and as steep as 1:28.6 (3.5%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered this cross slope in this access aisle and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

i.    (i) In the parking lot, the running slope of the access aisle outside of room 414 has a cross slope that is steeper than 1:48 and steeper than 3.1%.    (ii) The running slope of this access aisle is steeper than the maximum allowed slope of 1:48 and as steep as 1:27.8 (3.6%), in violation of Federal Law 2010, ADAAG § 502.4.    (iii) The Plaintiff encountered this running slope in this access aisle and it made his wheelchair unstable. (iv) The action required to reduce the running slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

j.    (i) In the parking lot, the cross slope of the access aisle outside of room 414 has a cross slope that is steeper than 1:48 and stepper than 3.1%.    (ii) The cross slope of this access aisle is steeper than the maximum allowed slope of 1:48 and as steep as 1:27.0 (3.7%), in violation of Federal Law 2010, ADAAG § 502.4.    (iii) The Plaintiff encountered this cross slope in this access aisle and it made his wheelchair unstable.    (iv) The action required to reduce the cross slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

k.    (i) The changes in level of the sidewalk outside of room 414 are greater than 0.5 inches.    (ii) These changes of level shown in the photographs below are greater than the maximum allowed change of level of 0.5 inches for a walkway along the accessible route, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.    (iii) While moving in his wheelchair, the Plaintiff encountered these changes in level, and they stopped the forward movement of his wheelchair.    (iv) The action required to reduce these changes in level of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

9







l.    (i) The change in level of the sidewalk toward room 513 has a change in level greater than 0.5 inches.   (ii) This change of level of this sidewalk along the accessible route to room 513, a room designated as accessible, is greater than the maximum allowed change in level of 0.5 inches, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this change of level and it stopped the forward movement of his wheelchair.   (iv) The action required to reduce this change in level is easily accomplishable and able to be carried out without much difficulty or expense.

m.    (i) The cross slope of the walking surface toward room 414 is steeper than 1:48 and steeper than 3.1%.   (ii) The cross slope of this walking surface is steeper than 1:48

and steeper than 3.5%, in violation of Federal Law 2010, ADAAG § 403.3.  (iii) The Plaintiff moved in his wheelchair on this walkway toward room 414, and its cross slope made his wheelchair unstable.  (iv) The action required to reduce the cross slope of this walkway is easily accomplishable and able to be carried out without much difficulty or expense.

     n.    (i)   The running slope of the access ramp in front of the hotel lobby is steeper than 1:12 (8%) and steeper than 9%.  (ii) The running slope of this access ramp is steeper than 1:12 (8%) and steeper than 9%, in violation of Federal Law 2010, ADAAG § 405.2. (iii) The Plaintiff encountered this steep slope of this access ramp while moving in his wheelchair, and he required assistance to move up this ramp.  (iv) The action required to reduce the running slope of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.

     o.    (i)   The slope of the curb ramp side of the access ramp in front of the hotel lobby is steeper than 1:10 (10%) and steeper than 11%.  (ii) The slope of this curb ramp side is steeper than the maximum allowed slope of 1:10 (10%) and steeper than 15%, in violation of Federal Law 2010, ADAAG § 406.3.  (iii) The Plaintiff encountered the steep slope of this curb ramp side and it almost overturned his wheelchair.  (iv) The action required to reduce the slope of this curb ramp side is easily accomplishable and able to be carried out without much difficulty or expense.

     p.   (i) The slope of the left (as one faces the building) curb ramp side outside of room 414 is steeper than 1:10 (10%) and steeper than 11%.  (ii) The slope of this curb ramp side is steeper than 1:10 (10%) and steeper than 14%, in violation of Federal Law 2010, ADAAG § 406.3.  (iii) The Plaintiff encountered this curb ramp side while moving in his

wheelchair and he had to take special care to avoid overturning his wheelchair on it.   (iv) The action required to reduce the slope of this curb ramp side is easily accomplishable and able to be carried out without much difficulty or expense.

q.    (i) The access ramp in front of the outside of room 414 does not have a landing at the top of the ramp run.   (ii) This access ramp does not have a landing at its top, in violation of Federal Law 2010, ADAAG § 405.7.   (iii) The Plaintiff used this access ramp, and due to the lack of landing at its top, he had difficulty maneuvering his wheelchair, and his wheelchair slipped sideways when he turned.   (iv) The action required to install a top landing to this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.

r.    (i) The slope of the ground surface within the hotel lobby entrance door maneuvering space within 60 inches of the door is steeper than 1:48 and steeper than 3.1%. (ii) The slope of the ground surface within the required maneuvering space of 60 inches of the entrance door to the hotel lobby is steeper than 1:48 and as steep as about 5%, in violation of Federal Law 2010, ADAAG § 404.2.4.4.   (iii) Due to the slope of the ground surface in front this entrance door, the Plaintiff's wheelchair slipped sideways as he tried to enter the hotel.   (iv) The action required to reduce the slope of this maneuvering space is easily accomplishable and able to be carried out without much difficulty or expense.

**LOBBY COUNTER AREA**

s.    (i) In the lobby area, a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the floor is not provided.   (ii) In the lobby area, a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is not provided, and the counter surface throughout the

lobby is about 48 inches high above the finish floor, in violation of Federal Law 2010, ADAAG § 904.4.1.   (iii) Due to the height of the counter surface in the lobby, the Plaintiff could not reach or view items on the counter from his wheelchair.   (iv) The action required to provide a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is easily accomplishable and able to be carried out without much difficulty or expense.

**LOBBY MEN'S RESTROOM**

t.    (i) In the men's restroom in the lobby, the men's restroom does not have signage with the International Symbol of Accessibility.   (ii) This men's restroom does not have signage with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG § 703.7.2.1.   (iii) The Plaintiff observed this lack of signage with the International Symbol of Accessibility for the men's restroom in the lobby, and it deters him from wanting to stay at Cloverleaf Suites.   (iv) The action required to place a sign at this restroom with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

u.    (i) In the men's restroom in the lobby, the accessible toilet compartment width is less than 60 inches.   (ii) The width of this accessible toilet compartment is less than a minimum of 60 inches and is only about 41 inches wide, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3.   (iii) Due to this toilet compartment's lack of width, the Plaintiff had difficulty maneuvering his wheelchair in it, and he required assistance to move away from the toilet.

v.    (i) In the men's restroom in the lobby, the accessible toilet compartment lacks a rear wall grab bar.   (ii) As shown in the photograph below, this accessible toilet

compartment lacks a rear wall grab bar, in violation of Federal Law 2010, ADAAG § 604.5. (iii) Due to the lack of a rear wall grab bar, the Plaintiff had difficulty transferring himself from his wheelchair to the toilet.   (iv) The action required to install a rear wall grab bar in this compartment is easily accomplishable and able to be carried out without much difficulty or expense.



w.   (i) In the men's restroom in the lobby, the side wall grab bar in the accessible toilet compartment does not extend 54 inches from the rear wall.   (ii) This side wall grab bar does not extend 54 inches from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) The Plaintiff had difficulty using this side wall grab bar to transfer himself from this wheelchair to the toilet and back again due to its lack of adequate extension from the rear wall.   (iv) The action required to install a side wall grab bar of

proper length is easily accomplishable and able to be carried out without much difficulty or expense.

x.   (i) In the men's restroom in the lobby, the drain and supply pipes under the sink are not insulated.   (ii) The drain and supply pipes under this sink are not insulated as shown in the photograph below, in violation of Federal Law 2010, ADAAG § 606.5.   (iii) The Plaintiff used this sink and he risked skin burns and injury to his legs due to the lack of insulation on the drain and supply pipes to this sink.   (iv) The action required to insulate the drain and supply pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.



y.   (i) In the men's restroom in the lobby, the operation of the controls for the water faucet to the sink require tight grasping, pinching or twisting of the wrist.   (ii) The operation of the controls for the water faucet to the sink require tight grasping, pinching or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 606.4 and 309.4.   (iii)

The Plaintiff tried but could not operate the controls for this water faucet with a loose grip or closed fist.   (iv) The action required to replace these water faucet controls to this sink is easily accomplishable and able to be carried out without much difficulty or expense.

z.   (i) In the men's restroom in the lobby, the centerline of the toilet paper dispenser in the accessible toilet compartment is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of this toilet paper dispenser is not between 7 inches minimum and 9 inches maximum from the front of the toilet, and is even or behind the centerline of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of this toilet paper dispenser, the Plaintiff could not reach toilet paper from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

aa.   (i) In the men's restroom in the lobby, the distance from the centerline of the toilet in the toilet compartment to the side wall is not between 16 and 19 inches.   (ii) The centerline of this toilet to the side wall is not between a minimum of 16 inches and a maximum of 19 inches, and is about 23 inches from the side wall, in violation of Federal Law 2010, ADAAG § 604.2.   (iii) Due to the location of this toilet from the side wall, the Plaintiff had more difficulty using the side wall grab bar and reaching the toilet paper.   (iv) The action required to relocate this toilet is easily accomplishable and able to be carried out without much difficulty or expense.

bb.   In the men's restroom in the lobby, the paper towel dispenser outlet is higher than 48 inches above the floor.   (ii) This paper towel dispenser is higher than 48 inches above the finish floor and as high as about 55 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) Due to its height above the floor, the Plaintiff tried

but could not reach this paper towel dispenser from his wheelchair.  (iv) The action required to relocate this paper towel dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

cc.   (i) In the men's restroom in the lobby, the toilet seat cover dispenser is higher than 48 inches above the floor.   (ii) This toilet seat cover dispenser outlet is higher than 48 inches above the finish floor and as high as about 61 inches above the finish floor, and it is outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) Due to tis height above the finish floor, the Plaintiff tried but could not reach a toilet seat cover dispenser from his wheelchair.  (iv) The action required to relocate this toilet seat cover dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

dd.   (i) In the men's restroom in the lobby, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor and outside of the reach range of an individual in a wheelchair, and is as high as about 49 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   (iii) Due to the height of the bottom edge of this mirror's reflecting surface above the floor, the Plaintiff could not see his face in this mirror from his wheelchair.   (iv) The action required to relocate this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

ee.   (i) In the men's restroom in the lobby, a door pull is not provided on both sides of the toilet compartment door.   (ii) A door pull is not provided on both sides of the accessible toilet compartment door, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull on the inside of the toilet compartment, the

18

Plaintiff could not fully close the door to the toilet compartment.   (iv) The action required to install a door pull is easily accomplishable and able to be carried out without much difficulty or expense.

ff.   (i) In the men's restroom in the lobby, the coat hook in the toilet compartment is higher than 48 inches above the floor.   (ii) The coat hook in this toilet compartment is higher than 48 inches above the finish floor and is outside the reach range of an individual in a wheelchair, and is about 68 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff observed the height of this coat hook above the floor, and it deters him from staying at Cloverleaf Suites.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

**BREAKFAST AREA**

gg.   (i)   In the breakfast area, the fruit baskets, the dispenser handle for the hot water container, the dispenser lever for the hot water machine, the handle to the waffle maker, and the keys to operate the waffle machine are all higher than 48 inches above the floor. (ii) These items are all higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to their height above the floor, the Plaintiff could not reach fruit, make coffee, obtain hot water, and use the waffle maker from his wheelchair.   (iv) The action required to relocate these items or to lower the surface of the counter is easily accomplishable and able to be carried out without much difficult or expense.

**ACCESSIBLE GUESTROOM 513**

hh.   (i) At accessible guestroom 513, the height of the threshold to the entrance door

is greater than 0.75 inches.    (ii) The threshold to this door is higher than 0.75 inches for an existing or altered door, in violation of Federal Law 2010, ADAAG § 404.2.5.    (iii) Due to the height of this threshold, the Plaintiff required assistance to move over it in his wheelchair to enter room 513.    (iv) The action required to reduce the height of this threshold is easily accomplishable and able to be carried out without much difficulty or expense.

ii.    (i) In accessible guestroom 513, the operation of the door lock to the entrance door requires tight grasping, pinching, or twisting of the wrist.    (ii) The operation of this door lock requires tight grasping, pinching or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 404.2.7 and 309.4.    (iii) The Plaintiff tried but could not operate this door lock with a closed fist or loose grip.    (iv) The action required to replace this door lock is easily accomplishable and able to be carried out without much difficulty or expense.

jj.    (i) In accessible guestroom 513, the security latch to the entrance door is higher than 48 inches above the floor.    (ii) This security latch is higher than 48 inches above the finish floor and as high as about 54 inches above the finish floor, and it is outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 404.2.7.    (iii) Due to its height above the floor, the Plaintiff tried but could not reach this security latch to close it from his wheelchair.    (iv) The action required to relocate this security latch is easily accomplishable and able to be carried out without much difficulty or expense.

kk.    (i) In accessible guestroom 513, the operation of the control knob for the microwave requires tight grasping, pinching, or twisting of the wrist.    (ii) The operation of this control knob for the microwave requires tight grasping, pinching, or twisting of the

wrist, in violation of Federal Law 2010, ADAAG § 309.4.   (iii) The Plaintiff tried but could not operate this control knob for the microwave with a closed fist or loose grip.   (iv) The action required to replace this control knob or the microwave is easily accomplishable and able to be carried out without much difficulty or expense.

ll.    (i) In accessible guestroom 513, the clear floor space between the bed and the wall is less than 30 inches.   (ii) The clear floor space between the bed and the wall to access the alarm clock and the phone is less than 30 inches wide, in violation of Federal Law 2010, ADAAG § 305.   (iii) Due to the lack of space between the bed and the wall, the Plaintiff could not move his wheelchair between the bed and the wall to reach the alarm clock and phone.   (iv) The action required to move the bed and to have a written policy in place not to locate the bed closer than 30 inches to the wall is easily accomplishable and able to be carried out without much difficulty or expense.

mm.      (i) In accessible guestroom 513, the jugs, pots, kitchen plates and cups are located on hooks or shelving that are all higher than 48 inches above the floor.   (ii) These items are all located on hooks and shelving that is higher than 48 inches above the finish floor and higher than 58 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) Due to their height above the floor, the Plaintiff tried but could not reach any of these items from his wheelchair.   (iv) The action required to relocate these hooks and shelving is easily accomplishable and able to be carried out without much difficulty or expense.

**RESTROOM IN ACCESSIBLE GUESTROOM 513**

nn.   (i) In the restroom of accessible guestroom 513, the restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is

less than 18 inches.   (ii) The restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than 18 inches and is only about 5 inches, in violation of Federal Law 2010, ADAAG §404.2.4.   (iii) Due to this lack of door pull side maneuvering clearance, the Plaintiff required assistance to exit the restroom in his wheelchair.   (iv) The action required to increase this door pull side maneuvering clearance is easily accomplishable and able to be carried out without much difficulty or expense.

oo.   (i) In the restroom of accessible guestroom 513, the restroom does not have a rear wall grab bar.   (ii) As shown in the photograph below, the restroom of accessible guestroom 513 does not have a rear wall grab bar, in violation of Federal Law 2010, ADAAG § 604.5.   (iii) Due to the lack of a rear wall grab bar, the Plaintiff had great difficulty transferring himself from his wheelchair to the toilet.   (iv) The action required to install a rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.



**pp.**   (i) In the restroom of accessible guestroom 513, the seat provided for the bathtub compartment is not a permanent or capable of secure placement.   (ii) The seat provided for the tub compartment is not permanent or capable of secure placement, in violation of Federal Law 2010, ADAAG § 610.2.   (iii) Due to the lack of a proper seat for the bathtub, the Plaintiff required assistance to bathe.   (iv) The action required to provide an ADA compliant seat for the bathtub is easily accomplishable and able to be carried out without much difficulty or expense.

**qq.**   (i) In the restroom of accessible guestroom 513, the controls for the bathtub faucet and shower spray are not located between the centerline and the open side of the bathtub. (ii) These controls for the tub faucet and shower spray are not located between the centerline and the open side of the bathtub, in violation of Federal Law 2010, ADAAG §§ 607.5 and 608.5.   (iii) Due to the location of the water controls for the bathtub, the Plaintiff

could not operate them from outside of the bathtub while in his wheelchair.   (iv) The action required to relocate these faucet and shower spray controls is easily accomplishable and able to be carried out without much difficulty or expense.

rr.   (i) In the restroom in accessible guestroom 513, the end walls of the bathtub do not have grab bars.   (ii) The end walls of this bathtub do not have grab bars, in violation of Federal Law 2010, ADAAG §§ 607.4.2.2 and 607.4.2.3.   (iii) Due to the lack of grab bars on the end walls of the bathtub, the Plaintiff required assistance to bathe.   (iv) The action required to install end wall grab bars is easily accomplishable and able to be carried out without much difficulty or expense.

ss.   (i) In the restroom of accessible guestroom 513, the clearance parallel to the bathtub is blocked by the toilet and is less than the full length of the bathtub.   (ii) The clearance parallel to the bathtub does not extend the full length of the bathtub, in violation of Federal Law 2010, § 607.2.   (iii) This lack of clearance made it difficult for the Plaintiff to maneuver his wheelchair to enter the bathtub and it prevented him from reaching the faucet controls from his wheelchair.   (iv) The action required to increase the clearance parallel to this bathtub is easily accomplishable and able to be carried out without much difficulty or expense.

tt.   (i) In the restroom of accessible guestroom 513, the shower spray head is higher than 48 inches above the floor of the bathtub.   (ii) The shower spray head in this bathtub is higher than 48 inches above the finish floor of the bathtub and is about 71 inches above the finish floor of the bathtub, in violation of Federal Law 2010, ADAAG § 608.6.   (iii) Due to the height of this shower spray head above the floor of the bathtub, the Plaintiff could not reach it to adjust it or to use it as a hand-held shower.   (iv) The action required

to relocate this shower spray head is easily accomplishable and able to be carried out without much difficulty or expense.

uu.    (i) In the restroom of accessible guestroom 513, the seat height of the toilet above the floor is less than 17 inches.   (ii) The seat height of this toilet is less than 17 inches above the finish floor and is about 15 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 604.4.   (iii) Due to the low seat height of this toilet, the plaintiff required assistance to rise up from this toilet to transfer himself back to his wheelchair. (iv) The action required to replace this toilet with an ADA compliant toilet is easily accomplishable and able to be carried out without much difficulty or expense.

vv.    (i) In the restroom of accessible guestroom 513, the side wall grab bar is less than 42 inches long.   (ii) This side wall grab bar is less than 42 inches long and is only about 36 inches long, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to the short length of this side wall grab bar, it was difficult for the Plaintiff to use it to help to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to install a side wall grab bar of proper length is easily accomplishable and able to be carried out without much difficulty or expense.

ww.     (i) In the restroom of accessible guestroom 513, the side wall grab bar extends less than 54 inches from the rear wall.   (ii) The side wall grab bar extends less than 54 inches from the rear wall and only about 45 inches from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to its lack of adequate extension from the rear wall, the plaintiff had difficulty using this side wall grab bar to help transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to install a side wall grab bar of proper length and in the proper position is easily accomplishable and able

to be carried out without much difficulty or expense.

xx.   (i) In the restroom of accessible guestroom 513, the drain and supply pipes under the sink are not insulated.   (ii) The drain and supply pipes under this sink are not insulated as shown in the photograph below, in violation of Federal Law 2010, ADAAG § 606.5. (iii) The Plaintiff used this sink and he risked skin burns and injury to his legs because the drain and supply pipes are not insulated.   (iv) The action required to insulate the pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.



yy. (i) In the restroom of guestroom 513, the centerline of the toilet paper dispenser is not located between 7 and 9 inches from the front of the toilet.   (ii) The centerline of this toilet paper dispenser is not located between a minimum of 7 inches and a maximum of 9

inches from the front of the toilet and is only about 4 inches from the front of the toilet, in violation of Federal law 2010, ADAAG § 604.7.   (iii) Due in part to the location of this toilet paper dispenser, the Plaintiff could not reach toilet paper from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

zz.   (i) In the restroom of accessible guestroom 513, the towel shelf is higher than 48 inches above the floor.   (ii) This towel shelf is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) Due to the height of this towel shelf above the floor, the Plaintiff required assistance to have a towel handed to him since he could not reach it from his wheelchair.   (iv) The action required to relocate this towel shelf is easily accomplishable and able to be carried out without much difficulty or expense.

**POOL AREA**

aaa.        (i) The outside entrance to the pool area does not have signage with the International Symbol of Accessibility.   (ii) The outside entrance to the pool area does not have signage with the International Symbol of Accessibility as shown in the photograph below, in violation of Federal Law 2010, ADAAG §§ 216.6 and 703.7.2.1.   (iii) The Plaintiff observed this lack of signage with the International Symbol of Accessibility, and it deters him from staying at Cloverleaf Suites.   (iv) The action required to install signage with the International Symbol of Accessibility at the entrance to this pool area is easily accomplishable and able to be carried out without much difficulty or expense.



bbb.        (i) The walkway to the pool area entrance has a change of level of more

than 0.5 inches.   (ii) The walkway to the pool area has a change of level of more than 0.5

inches and as much as about 1.5 inches, in violation of Federal Law 2010, ADAAG §

303.3.   (iii) The Plaintiff had to take precaution to avoid this change of level while moving

in his wheelchair.   (iv) The action required to reduce this change of level shown in the

degraded area of the photograph under subparagraph (aaa) above is easily accomplishable

and able to be carried out without much difficulty or expense.

ccc.        (i) The walkway around the pool area has a change of level of more than

0.5 inches.   (ii) The walkway around the pool area has a change of level of more than

0.5 inches, in violation of Federal Law 2010, ADAAG § 303.3.   (iii) While moving in his

wheelchair, the Plaintiff encountered this change of level in the walkway around the pool and it stopped the forward movement of his wheelchair and almost caused his wheelchair to overturn.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.

ddd.      (i) The running slope of the walkway at the outside entrance to the pool area is steeper than 1:20 (5%) and steeper than 6%.   (ii) The running slope of the walkway at the outside of the pool area is steeper than 1:20 (5%) and steeper than 7.8%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) The Plaintiff encountered this steep running slope while moving in his wheelchair, and it made his wheelchair unstable.   (iv) The action required to reduce the running slope of this section of the walkway is easily accomplishable and able to be carried out without much difficulty or expense.

eee.      (i) The cross slope of the walking surface around the pool is steeper than 1:48 and steeper than 3.1%.   (ii) The cross slope of the walking surface around the pool is steeper than 1:48 and is steeper than 5%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this steep cross slope of the walkway around the pool and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this walkway is easily accomplishable and able to be carried out without much difficulty or expense.

**OUTSIDE PATIO AND SEATING AREA**

fff.   (i) On the walkway along the route to the outside patio and seating area, there are spots where there are changes in level of more than 0.5 inches.   (ii) These changes in level of more than 0.5 inches are in violation of Federal Law 2010, ADAAG § 303.3.   (iii) While moving in his wheelchair, the Plaintiff encountered these changes in level and he

had difficulty maneuvering his wheelchair and keeping his wheelchair stable as a result of them.   (iv) The action required to reduce these changes in level is easily accomplishable and able to be carried out without much difficulty or expense.

ggg.    (i) Handrails are not provided around the ramp to the outdoor patio and seating area where the rise is greater than 6 inches over a ten-foot span of the ramp.   (ii) The ramp to the outside patio and seating area has a rise of more than 6 inches over a ten-foot span and it does not have handrails, in violation of Federal Law 2010, ADAAG §§ 405.8 and 505.   (iii) Due to the slope of this ramp, the Plaintiff required assistance to move up and down this ramp in his wheelchair.   (iv) The action required to install handrails around this ramp is easily accomplishable and able to be carried out without much difficulty or expense.

hhh.    (i) At the outside patio and seating area, the cross slope of the walkway near the seating area is steeper than 1:48 and steeper than 3.1%.   (ii) The cross slope of this walkway near the outside seating area is steeper than 1:48 and is steeper than 4%, in violation of Federal Law 2010, ADAAG 403.3.   (iii) The Plaintiff encountered this cross slope of this walkway while moving in his wheelchair, and it made his wheelchair unstable and caused his wheelchair to slip sideways when he stopped.   (iv) The action required to reduce the cross slope of this walkway is easily accomplishable and able to be carried out without much difficulty or expense.

33.    All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

34.    The discriminatory violations described in paragraph 32 are not an exclusive list of

the Defendant's ADA violations.  Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.

35.     Plaintiff requires access to accessible guestroom 414 in which he stayed to verify if the barriers to access remain that he encountered in this room and its restroom.

36.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.

37.     The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

38.     Defendant has discriminated against the individual by denying individuals access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.  Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

39.     Plaintiff is without adequate remedy at law and is suffering irreparable harm.

Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

40.    Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

41.    Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facilities were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

42.    Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

43.    Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Cloverleaf Suites, adjacent parking lot spaces, and walking surfaces to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing

the facilities until such time as the Defendant cures its violations of the ADA.

44.    Millions of Americans require the use of a wheelchair for mobility.

45.    The number of wheelchair users increases in the United States every year due in part to the aging of the baby boomer generation.

46.    At some point, every family embraces disability.

47.    Removing existing architectural barriers to access under Title III of the ADA will be good for business at the Cloverleaf Suites.

**WHEREFORE,** Plaintiff respectfully requests:

a.    The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.    Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.    An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.     Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

<u>**DESIGNATION OF PLACE OF TRIAL**</u>

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Kansas City, Kansas as the place of trial for this action.

Respectfully submitted,

<u>s/Robert J. Vincze</u>
Robert J. Vincze (KS #14101)
Law Offices of Robert J. Vincze
PO Box 792, Andover, Kansas 67002
Phone: 303-204-8207
Email: <u>vinczelaw@att.net</u>

*Attorney for Plaintiff Fred Nekouee*